UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

CARRIE R. C.,[1]    Case No. 6:20-cv-01535-MK

        Plaintiff,    **OPINION AND ORDER**

v.

COMMISSIONER, Social Security Administration,

        Defendant.

_____

**KASUBHAI,** United States Magistrate Judge:

        Plaintiff Carrie R. C. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). *See* ECF No. 6. For the reasons set forth below, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB in July 2018 with an alleged onset date of July 3, 2018. Tr. 15.[2] Plaintiff's application was denied initially in January 2019, Tr. 89, and again upon reconsideration in April 2019, Tr. 105. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 116, and a hearing was held in February 2020, Tr. 144. On March 4, 2020, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 24. The Appeals Council denied Plaintiff's request for review, Tr. 1, and the ALJ's decision operates as the final decision of the Commissioner subject to this Court's review. Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 28 years old on her alleged onset date of July 3, 2018. Tr. 76. She has a high school education and has past relevant work as a kitchen helper. Tr. 22, 81. Plaintiff alleges disability based on learning disability, anxiety, depression, persistent depressive disorder, panic disorder, generalized anxiety disorder, back problems, hypoglycemia problems, and dizziness. Tr. 220.

## LEGAL STANDARD

A court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The court must weigh "both

---

[2] "Tr." citations are to the Administrative Record. ECF No. 11.

the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation" (citation omitted)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation and internal quotations omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment does not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the

Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations the claimant's impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, the claimant is not disabled; if the claimant cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since her alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: generalized anxiety disorder ("GAD"), adjustment disorder with depression, attention deficit hyperactivity disorder ("ADHD"), learning disorder of reading and math, and a history of obsessive compulsive disorder ("OCD"). *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or

combination thereof that met or medically equaled the severity of a listed impairment. Tr. 18. The ALJ found that Plaintiff had the RFC to perform full range of work at all exertional levels but with the following non-exertional limitations:

> [T]he claimant has the ability to understand, remember, and carry out simple, routine, repetitive tasks consistent with unskilled work and a DOT GED reasoning level of 2 or less. The claimant should not interact with the public and have only occasional interaction with co-workers and supervisors; no teamwork tasks with co-workers. She requires a static work environment with few changes in work routines and settings. No jobs requiring reading and/or math.

Tr. 19.

At step four, the ALJ determined that Plaintiff had past relevant work as a kitchen helper. Tr. 22. In the alternative, at step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite her impairments. Tr. 22–23. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 24.

## DISCUSSION

Plaintiff asserts that remand is warranted for two reasons: (1) the ALJ erred by improperly rejecting and improperly considering medical opinion evidence, and (2) the ALJ erred by improperly rejecting Plaintiff's subjective symptom testimony. The Court addresses each argument in turn.

### I. Medical Evidence

Plaintiff challenges the ALJ's assessment of the medical opinion evidence. Pl.'s Opening Br. 5, ECF No. 16. For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867–68

(Jan. 18, 2017); *see also Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) ("For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence.").

Under the new regulations, the Commissioner is no longer required to supply "specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Allen O. v. Comm'r of Soc. Sec.*, 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (citing *Revisions to Rules*, 2017 WL 168819, at *5867–68). Instead, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[ ], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[ ] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). ALJs may consider other factors relating to the provider's relationship with the claimant; however, they are not required to do so except in a limited number of circumstances. 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3).

The parties do not dispute that the new regulations apply. The Commissioner, however, disputes the impact the new regulations have on existing Ninth Circuit caselaw. *See, e.g.*, *Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021) (noting that

"the Commissioner revised agency regulations to eliminate the hierarchy of medical opinions"); *Thomas S. v. Comm'r of Soc. Sec.*, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020) (noting that the "hierarchy [for treatment of medical opinion evidence] underpinned the requirement in the Ninth Circuit that an ALJ must provide clear and convincing reasons to reject an uncontradicted doctor's opinion and specific and legitimate reason where the record contains contradictory opinion"). The Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting medical opinion evidence. *See Robert S.*, 2021 WL 1214518, at *4 (D. Or. Mar. 3, 2021) (collecting cases).

Given the Act's broad grant of authority to the agency to adopt rules regarding "proofs and evidence," prior caselaw must yield to the Commissioner's new, permissible regulations to the extent older cases expressly relied on the former regulations. *Yuckert*, 482 U.S. at 145 ("The Act authorizes the Secretary to 'adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same' in disability cases." (citing 42 U.S.C. § 405(a)); *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005) (holding that courts should grant *Chevron* deference to regulatory changes that conflict with prior judicial precedent, unless a court's prior construction followed from the unambiguous terms of the statute and thus left no room for agency discretion); *Emilie K. v. Saul*, 2021 WL 864869, at *4 (E.D. Wash. Mar. 8, 2021) (collecting cases and observing "[m]ost District Courts to have addressed this issue have concluded that the regulations displace Ninth Circuit precedent").

The new regulations do not, however, upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding on this Court. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. *Ghanim v. Colvin*, 763

F.3d 1154, 1162 (9th Cir. 2014); *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted). In other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the medical evidence.

### A.    Robert W. Nielsen, LCSW

Robert Nielsen serves as Plaintiff's treating Licensed Clinical Social Worker. Tr. 590. LCSW Nielsen has treated Plaintiff since October 2018. *Id.* In August 2019, LCSW Nielsen opined that, due to her conditions, Plaintiff "[e]xperiences anxiety and depression, as well as

some anger management issues on a regular (daily) basis[.]" *Id.* He noted Plaintiff's symptoms include:

> Having a racing heart, diarrhea (daily, due to anxiety), fears of leaving home, obsessive thoughts, fears of losing job, fears of running into "stupid people from [her] past", low self-esteem, concentration troubles, loss of appetite, memory problems, thinks people are watching/talking about her all the time, hyperactive (bounces legs), compulsive behaviors, feels edgy/stressed, low energy, panic attacks, difficulty breathing, family history of anxiety/panic, guilt, depression, forgets things, low motivation, sleep difficulty.

*Id.* LCSW Nielsen opined that Plaintiff's "symptoms are severe enough to make finding a full time or extended hours job nearly impossible to find and sustain for an extended period of time." *Id.* While he acknowledged that Plaintiff "seems to cope better with her sign waving advertisement job since beginning counseling," he also noted that Plaintiff "still fights back with verbally and emotionally abusive people she encounters for the few hours she works each week." *Id.* LCSW Nielsen further opined that he did not believe Plaintiff would "respond well to criticism of her job duties and performance" or that Plaintiff would "be able to complete complex or detailed tasks or sustain attention and concentration consistently to be able to work a full-time job." *Id.*

The ALJ did not address LCSW Nielsen's opinion. The Commissioner argues the ALJ was not required to so because: (1) the opinion does not describe specific limitations but merely states a belief regarding Plaintiff's inability to work, and (2) the ALJ does not need to discuss all evidence presented. Def.'s Br. 10–11, ECF No. 17.

First, LCSW Nielsen opined that Plaintiff could not respond well to criticism, complete complex or detailed tasks, or sustain attention and concentration sufficiently. Tr. 590. In doing so, LCSW Nielsen described Plaintiff's specific limitations. Second, the ALJ erred in failing to

articulate the persuasiveness of LCSW Nielsen's opinion. Under the new rules, an ALJ "will articulate in . . . [the] decision how persuasive [the ALJ] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(b), 416.920c(b); *see also Dalka v. Kijakazi*, 2021 WL 5768463, at *1 (9th Cir. Dec. 6, 2021) ("The applicable regulation, 20 C.F.R. § 404.1520c(b) (2017), required the ALJ to articulate on the record how persuasive those reports were. His failure to do so is legal error."). In addition, the most important factors in evaluating persuasiveness of a medical opinion, supportability and consistency, should be articulated by the ALJ. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As such, the ALJ's decision was not based on the proper legal standards and therefore must be reversed.

  **B.**   **Peter LeBray, Ph.D.**

  Dr. Peter LeBray performed a neuropsychological examination of Plaintiff in October 2019. Tr. 617. Dr. LeBray diagnosed Plaintiff with ADHD, inattentive type; generalized anxiety disorder, moderate reactive-social angst; major depression, mild, non-psychotic, recurrent; psychological factors affecting physical condition; and learning disorders. Tr. 622. Dr. LeBray noted that Plaintiff has an "open schedule" job as a sign holder where she works four-hour shifts "up to 20 hours or so weekly (part-time)." Tr. 619. Dr. LeBray also noted that Plaintiff reported when she had worked in entry-level labor jobs, she "conflicted with coworkers[,] [ ] often 'felt trapped' at work (fearful, apprehensive)[,] and often missed work shifts (due [to] illness)[.]" *Id.* Dr. LeBray determined that Plaintiff "seems to tolerate an 'open' schedule; that is, work a four hour shift of her choice (v. job shift demand, per se)." Tr. 624. Dr. LeBray opined that appropriate jobs for Plaintiff "should be simpler, predictable tasks that are not speeded or demand close social or literacy demands." *Id.* Dr. LeBray advised that Plaintiff should have "supportive feedback always (avoid harsh, highly critical style)." *Id.*

The ALJ summarized Dr. LeBray's opinion but did not explicitly articulate how persuasive the ALJ found the medical opinion. Tr. 20–21. The Commissioner argues "Dr. LeBray's opinion and Plaintiff's were in accord with the ALJ's RFC." Def.'s Br. 10, ECF No. 17. At no point did the ALJ explicitly articulate the persuasiveness of Dr. LeBray's opinion as required by the new regulations. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). As such, the ALJ's decision was not based on the proper legal standards and therefore must be reversed.

### C.     Eric Leong, D.O.

Dr. Eric Leong served as Plaintiff's treating psychiatrist. Tr. 768. Dr. Leong has treated Plaintiff for major depression, generalized anxiety disorder, and panic disorder since June 2019. *Id.* In a short letter, Dr. Leong opined that "[f]rom [his] estimation, [Plaintiff] does have the ability to work a regular full-time job but has a low tolerance for others." *Id.*

The ALJ determined that Dr. Leong's opinion "is persuasive and consistent with the medical evidence of record and the claimant's testimony[.]" Tr. 21. The ALJ did not explicitly address the supportability of Dr. Leong's opinion. Plaintiff argues that the ALJ's failure to consider the supportability of Dr. Leong's opinion was harmful error. Pl.'s Opening Br. 12–13, ECF No. 16. The Commissioner does not address Plaintiff's argument with respect to Dr. Leong.

Here, the ALJ erred in not "explain[ing] how [the ALJ] considered the supportability *and* consistency factors for a medical source's medical opinions[.]" 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (emphasis added). The Ninth Circuit has held that an ALJ's failure to "articulate on the record how persuasive" that ALJ finds a medical opinion is legal error. *See Dalka*, 2021 WL 5768463, at *1. As such, the ALJ's decision was not based on the proper legal standards and therefore must be reversed.

**II.     Subjective Symptom Testimony**

Plaintiff assigns error to the ALJ's evaluation of her subjective symptom testimony. Pl.'s Opening Br. 13–18, ECF No. 16. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; instead, the ALJ "must state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017). The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, 2017 WL 5180304, at *1–2 (S.S.A. Oct. 25, 2017).

provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

At her hearing, Plaintiff testified that she worked twenty hours per week or less depending on her depression. Tr. 42. Plaintiff testified that she misses one or two days every two-week period due to her depression. Tr. 43. She further testified that, without her medications, she misses two, three, or four days every two-week period. Tr. 44. Plaintiff experiences depression even when she takes her medication, and still feels nervous or sick before work. Tr. 49. Plaintiff testified that she feels trapped at work all the time and hates people. *Id.* Plaintiff mentioned that she has "a lot of anger." Tr. 57. Plaintiff does not believe she could work full-time because of her mental health impairments. Tr. 51. Plaintiff explained that she feared she would get more depressed if she worked full-time and that she would "probably have to make [her] med[ications] higher and [she does not] want to be a zombie." Tr. 52. Plaintiff testified that when she worked full-time, she thought about killing herself, her co-workers, and her boyfriend. Tr. 53. In her function report, Plaintiff testified that she had a mental breakdown while working full-time. Tr. 240. Plaintiff also explained that, when she worked as a dishwasher, she was overwhelmed by too many people around her and looking at her and felt "trapped." Tr. 54. Plaintiff testified that she forgets to complete tasks at work when she feels overwhelmed. Tr. 59.

Here, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 20. The ALJ also determined that "[t]he record does not show any evidence of decompensation or inability to work full-time due to the claimant's symptoms or impairments. That she has steadily worked part-time on a daily basis for over a year despite her symptomatic complaints indeed supports a conclusion that she is not

Page 13 — OPINION AND ORDER

disabled." Tr. 21. The Commissioner asserts that the ALJ properly discounted Plaintiff's subjective symptom testimony because it was inconsistent with the medical record.[4] Def.'s Br. 4, ECF No. 17.

In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, especially in the mental health context, an ALJ may not cherry-pick isolated instances of favorable psychological symptoms when the record as a whole reflects long-standing psychological disability. *See Ghanim*, 763 F.3d at 1164; *see also Garrison*, 759 F.3d at 1017. Moreover, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

An independent review of the record establishes that Plaintiff's subjective complaints are supported by the record. Between October 2017 and December 2019, Plaintiff consistently reported anxiety, depression, stress, mood swings, daily diarrhea, and panic attacks related to her full-time work. *See, e.g.*, Tr. 370 (reporting anxiety and panic attacks once or twice a month); 413 (reporting anxiety, mood swings, and depression); 488 (reporting feeling untrusting, anxious, depressed, and angry); 502 (reporting panic attacks once or twice a week); 586 (reporting panic attacks); 628 (reporting an anxiety attack); 731 (reporting panic attacks a flare of anxiety and depression while working full-time). Plaintiff also reported thoughts about harming herself and others while at work. *See, e.g.*, Tr. 367 (reporting intrusive thoughts relating to harm); Tr. 413 (reporting passive suicidal ideation); Tr. 731 (reporting suicidal and homicidal ideation). In addition, the medical opinions that the ALJ failed to adequately consider further

---

[4] The Commissioner also cites two authorities relating to conservative treatment but does not make any such argument. Def.'s Br. 5, ECF No. 17.

support Plaintiff's subjective symptom testimony. *See, e.g.*, Tr. 590 (LCSW Nielsen opining that Plaintiff experiences anxiety, depression, and anger management issues on a daily basis); Tr. 624 (Dr. LeBray opining that Plaintiff can tolerate working a four-hour shift of her choice). As such, the medical record in this case was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

### III.  Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting the medical opinion evidence and Plaintiff's subjective symptom testimony.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler*,

775 F.3d at 1101 (internal quotations and citations omitted). Here, the Court finds that remand would be useful to resolve the ambiguities and conflicts between the medical opinions in the record. The ALJ failed to sufficiently articulate the persuasiveness of the medical opinions in the record. *See id.* at 1105 (noting that the evaluation of testimony and evidence are "exactly the sort of issues that should be remanded to the agency for further proceedings").

Accordingly, this case is remanded for further administrative proceedings to: (1) reevaluate the medical opinions of Dr. LeBray and LCSW Nielsen and articulate the persuasiveness of each opinion; (2) reevaluate Dr. Leong's medical opinion and articulate the consistency and supportability of his opinion; (3) reevaluate Plaintiff's subjective symptom testimony; and (4) obtain additional VE testimony based on a reformulated RFC. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

## CONCLUSION

For the reasons discussed above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this <u>4th</u> day of January 2022.

s/ Mustafa T. Kasubhai  
MUSTAFA T. KASUBHAI (He / Him)  
United States Magistrate Judge